UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
THE HANOVER INSURANCE COMPANY,   Civil Action No.

      Plaintiff,

  -against-   **COMPLAINT**

A.J.S. PROJECT MANAGEMENT, INC.,
ANTHONY SCLAFANI, ROBERT
HOHMANN, and ANGELA HOHMANN,

      Defendants.
------------------------------------------------------------ X

Plaintiff The Hanover Insurance Company ("Hanover"), by its undersigned attorneys, as and for its Complaint against defendants A.J.S. Project Management, Inc., Anthony Sclafani, Robert Hohmann and Angela Hohmann, alleges as follows:

### PARTIES

1. Hanover is a Massachusetts corporation with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

2. Upon information and belief, A.J.S. Project Management, Inc. ("AJS") is a New York corporation with its place of business at 377 Fifth Avenue, New York, New York.

3. Upon information and belief, Anthony Sclafani is a citizen of the State of New York and resides at 9 Rawson Road, Sag Harbor, New York.

4. Upon information and belief, Robert Hohmann is a citizen of the State of New York and resides at 1721 Ryder Street, Brooklyn, New York.

5. Upon information and belief, Angela Hohmann is a citizen of the State of New York and resides at 1721 Ryder Street, Brooklyn, New York.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as it is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as AJS has its place of business in this district and all of the remaining defendants are residents of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. On or about October 5, 2010, AJS, Anthony Sclafani, Robert Hohmann and Angela Hohmann (collectively, the "Defendants") each executed a written Agreement of Indemnity (the "Indemnity Agreement") in favor of Hanover.

9. The Indemnity Agreement provides, among other things, that the Defendants shall indemnify Hanover for any and all losses and liabilities and expenses (including attorneys' fees) that Hanover may incur as a result of Hanover's having issued surety bonds ("Bonds") on behalf of AJS, as well as in enforcing Hanover's rights under the Indemnity Agreement.

10. AJS entered into a written contract with the New York City School Construction Authority (the "SCA") for AJS to perform construction work at PS 75 in the Bronx, New York (the "PS 75 Contract").

11. On or about June 21, 2011, Hanover, at the request of and on behalf of AJS, issued Payment Bond No. BCY-1940008 (the "PS 75 Payment Bond") in favor of the SCA for the PS 75 Contract.

12. AJS entered into a written contract with the SCA for AJS to perform construction work at PS 101 in New York, New York (the "PS 101 Contract").

2

13. On or about February 26, 2011, Hanover, at the request of and on behalf of AJS, issued Payment Bond No. BCY-1939990 (the "PS 101 Payment Bond") in favor of the SCA for the PS 101 Contract.

14. AJS entered into a written contract with the SCA for AJS to perform construction work at IS 22 in the Bronx, New York (the "IS 22 Contract").

15. On or about January 27, 2011, Hanover, at the request of and on behalf of AJS, issued Payment Bond No. BCY-1939989 (the "IS 22 Payment Bond") in favor of the SCA for the IS 22 Contract.

16. AJS entered into a written contract with the SCA for AJS to perform construction work at PS 64 in New York, New York (the "PS 64 Contract").

17. On or about June 17, 2011, Hanover, at the request of and on behalf of AJS, issued Payment Bond No. BCY-1940007 (the "PS 64 Payment Bond") in favor of the SCA for the PS 64 Contract.

18. AJS entered into a written contract with the SCA for AJS to perform construction work at IS 77 in Queens, New York (the "IS 77 Contract").

19. On or about June 6, 2011, Hanover, at the request of and on behalf of AJS, issued Payment Bond No. BCY-1940003 (the "IS 77 Payment Bond") in favor of the SCA for the IS 77 Contract.

20. AJS entered into a written contract with the City of New York, acting by and through its Department of Parks and Recreation (the "City"), for AJS to perform construction work at Midland Beach in Staten Island, New York (the "Midland Beach Contract").

21. On or about June 6, 2011, Hanover, at the request of and on behalf of AJS, issued Payment Bond No. BCY-1001616 (the "Midland Beach Payment Bond") in favor of the City for the Midland Beach Contract.

22. Hanover has received numerous claims (collectively, "Claims") under the aforementioned payment bonds (collectively, the "Payment Bonds") from some of AJS' subcontractors and suppliers (collectively, "Claimants"), in which the Claimants allege that AJS failed to fully pay the Claimants for labor and material that the Claimants provided to AJS in connection with the contracts referenced above.

23. Hanover has also been named as a defendant in multiple lawsuits filed by Claimants seeking payment under the Payment Bonds for amounts allegedly owed the Claimants due to AJS' alleged failure to fully pay the Claimants for labor and material that the Claimants provided to AJS in connection with the contracts referenced above.

24. Hanover was also named as a defendant in lawsuits filed by third parties who sought recovery from Hanover under lien discharge bonds that Hanover issued on behalf of AJS in order to discharge mechanics' liens filed due to AJS' alleged failure to fully pay the third parties which filed said liens for labor and material that the third parties provided to AJS in connection with various private construction projects.

25. Hanover retained counsel as a result of the claims and lawsuits referenced above, as well as to protect and enforce Hanover's rights under the Indemnity Agreement.

26. Hanover has demanded that Defendants provide Hanover with collateral pursuant to Defendants' obligations under the Indemnity Agreement.

27. Defendants have failed to provide Hanover with collateral.

28. Hanover has demanded that Defendants reimburse and indemnify Hanover for the legal fees and expenses that Hanover has incurred as a result of having issued surety bonds for AJS and in enforcing Hanover's rights under the Indemnity Agreement.

29. Defendants have failed to reimburse and indemnify Hanover for the legal fees and expenses that Hanover has incurred.

30. On or about May 18, 2016, Hanover incurred a loss under the PS 75 Payment Bond when it paid Imperium Construction, Inc. the sum of $100,000 in partial satisfaction of Imperium's claim under the PS 75 Payment Bond.

31. AJS consented to Hanover's making the $100,000 payment to Imperium.

32. On or about May 26, 2016, Hanover incurred a loss under the PS 75 Payment Bond when it paid Forsythe Plumbing and Heating Corp. the sum of $17,233 in satisfaction of Forsythe's claim under the PS 75 Payment Bond.

33. AJS consented to Hanover's making the $17,233 payment to Forsythe.

34. On or about June 1, 2016, Hanover incurred a loss under the PS 75 Payment Bond when it paid Industrial Asbestos Removal, Inc. the sum of $170,000 in satisfaction of Industrial Asbestos' claim under the PS 75 Payment Bond.

35. AJS consented to Hanover's making the $175,000 payment to Industrial Asbestos.

36. On or about June 6, 2016, Hanover incurred a loss under the PS 75 Payment Bond when it paid Precision Window Systems, Inc. the sum of $15,000 in satisfaction of Precision Window's claim under the PS 75 Payment Bond.

37. AJS consented to Hanover's making the $15,000 payment to Precision Window.

38. Hanover's total loss to date (exclusive of expenses) under the PS 75 Payment Bond is $307,233, no part of which has been repaid by the Defendants.

39. On or about December 21, 2015, Hanover incurred a loss under the Midland Beach Payment Bond when it paid Garden City Irrigation, Inc. the sum of $76,870.72 in satisfaction of Garden City's claim under the Midland Beach Payment Bond.

40. AJS consented to Hanover's making the $76,870.72 payment to Garden City.

41. On or about April 7, 2016, Hanover incurred a loss under the Midland Beach Payment Bond when it paid L. Russo Fence Company the sum of $17,000 in satisfaction of L. Russo's claim under the Midland Beach Payment Bond.

42. AJS consented to Hanover's making the $17,000 payment to L. Russo.

43. Hanover's total loss to date (exclusive of expenses) under the Midland Beach Payment Bond is $93,870.72, of which $51,234.34 has been repaid by the Defendants, leaving Hanover with a net loss to date (exclusive of expenses) under the Midland Beach Payment Bond of $42,636.38.

44. Hanover's outstanding losses under the PS 75 Payment Bond and Midland Beach Payment Bond are $349,869.38.

45. Hanover is a defendant in a lawsuit entitled *Swing Staging, LLC v. AJS Project Management Inc., New York City School Construction Authority and The Hanover Insurance Company*, pending in the Supreme Court of the State of New York, County of New York, Index No. 15975/2013 (the "Swing Staging Litigation"), in which Swing Staging seeks $51,141.78 from Hanover under the PS 75 Payment Bond due to AJS' alleged failure to fully pay Swing Staging for labor and material provided by Swing Staging to AJS for the PS 75 project.

46. Hanover is also a defendant in a lawsuit entitled *Staging Supply, Inc. v. AJS Project Management Inc., New York City School Construction Authority and The Hanover Insurance Company*, pending in the Supreme Court of the State of New York, County of New York, Index No. 653663/2013 (the "Staging Supply Litigation"), in which Staging Supply seeks $11,423.83 from Hanover under the PS 75 Payment Bond due to AJS' alleged failure to

fully pay Staging Supply for labor and material provided by Staging Supply to AJS for the PS 75 project.[1]

47. As of August 8, 2016, Hanover had incurred legal fees and expenses of $111,596.49 as a result of issuing the Bonds and enforcing its rights under the Indemnity Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION
(Contractual Indemnification For Losses Incurred - All Defendants)

48. Hanover repeats and realleges Paragraphs 1 through 47 hereof.

49. To date, Hanover has incurred total net losses of $349,869.38 as a result of having issued the under the PS 75 Payment Bond and the Midland Beach Payment Bond.

50. Pursuant to the Indemnity Agreement, the Defendants are jointly and severally liable for any and all losses incurred by Hanover by reason of Hanover having issued the PS 75 Payment Bond and the Midland Beach Payment Bond.

51. The Defendants have failed to indemnify Hanover for Hanover's net losses as a result of claims made against the PS 75 Payment Bond and the Midland Beach Payment Bond.

52. Defendants are therefore in breach of their obligations under the Indemnity Agreement.

53. Accordingly, the Defendants are jointly and severally liable to Hanover in the amount of $349,869.38 for the net losses Hanover has incurred to date as a result of having issued the PS 75 Payment Bond and the Midland Beach Payment Bond.

## AS AND FOR A SECOND CAUSE OF ACTION
(Common Law Indemnification For Losses Incurred - AJS Only)

54. Hanover repeats and realleges Paragraphs 1 through 53 hereof.

---

[1] Staging Supply has asserted claims against AJS in the Staging Supply Litigation claiming that monies are due it in connection with the PS 101 Contract ($89,884.21) and IS 22 Contract ($117,790.36), but has, to date, not made any claims against Hanover under the PS 101 Payment Bond or the IS 22 Payment Bond.

7

55. Hanover has a common-law right to be indemnified by AJS for all losses that Hanover has incurred as a result of having issued the PS 75 Payment Bond and the Midland Beach Payment Bond.

56. To date, Hanover has incurred net losses of $349,869.38 as a result of having issued the PS 75 Payment Bond and the Midland Beach Payment Bond.

57. AJS has not indemnified Hanover for these losses.

58. AJS is therefore in breach of its common-law duty to indemnify Hanover.

59. By reason of the foregoing, Hanover is entitled to judgment against AJS in the amount of $349,869.38.

### AS AND FOR A THIRD CAUSE OF ACTION
(Contractual Indemnification for Legal Fees and Expenses - All Defendants)

60. Hanover repeats and realleges Paragraphs 1 through 59 hereof.

61. As of August 8, 2016, Hanover had incurred legal fees and expenses of $111,596.49 as a result of issuing the Bonds and enforcing its rights under the Indemnity Agreement.

62. Defendants have failed to indemnify Hanover for these legal fees and expenses, as required by the Indemnity Agreement.

63. Defendants are therefore in breach of their obligations under the Indemnity Agreement.

64. Hanover will continue to incur legal fees in prosecuting this action, as well in defending itself in the lawsuits filed against Hanover by Swing Staging and Staging Supply.

65. Defendants are therefore jointly and severally liable to Hanover in the sum of $111,596.49, plus those fees incurred and/or paid for by Hanover subsequent to August 8, 2016 as a result of Hanover's having issued the Bonds for AJS and/or enforcing its rights under the

Indemnity Agreement, including the legal fees Hanover will incur in prosecuting this action and defending itself in the suits filed against Hanover by Swing Staging and Staging Supply.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Contractual Indemnification for Losses Incurred - All Defendants)

66.     Hanover repeats and realleges Paragraphs 1 through 65 hereof.

67.     If Hanover suffers a loss as a result of the claims made against Hanover under the PS 75 Payment Bond in the Swing Staging Litigation and/or the Staging Supply Litigation, or if the plaintiffs in either of those matters enter judgment for any amount against Hanover by reason of the allegations in the complaints filed in those respective matters, the Defendants, pursuant to the Indemnity Agreement, will be liable to Hanover to the extent that Hanover sustains a loss, and Hanover will be entitled to judgment against the Defendants, jointly and severally, for the amount of any loss suffered by Hanover or judgment entered against Hanover as a result of the claims made under the PS 75 Payment Bond in those matters.

**WHEREFORE,** Hanover Insurance Company demands judgment as follows:

A.     On the First Cause of Action, in favor of Hanover and against all Defendants, jointly and severally, in the amount of $349,869.38;

B.     On the Second Cause of Action, in favor of Hanover and against AJS in the amount of $349,869.38; and

C.     On the Third Cause of Action, in favor of Hanover and against all Defendants, jointly and severally, in the amount of $111,596.49, plus those fees incurred and/or paid for by Hanover subsequent to August 8, 2016 as a result of Hanover's having issued the Bonds for AJS and/or enforcing its rights under the Indemnity Agreement, including the legal fees Hanover will incur in prosecuting this action and in defending itself in the suits filed against Hanover by Swing Staging and Staging Supply.

9

D.      On the Fourth Cause of Action, in favor of Hanover and against all Defendants, jointly and severally, for the amount of any loss that suffers that Hanover may sustain under the PS 75 Payment Bond in the Swing Staging Litigation and/or the Staging Supply Litigation; and

E.      All of the foregoing with interest, costs, expenses, and such other and further relief as the Court deems just and proper.

Dated:  March 21, 2017

**CHIESA SHAHNINAN & GIANTOMASI PC**
Attorneys for Plaintiff
11 Times Square, 31st Floor
New York, New York  10036
(212) 973-0572

By:  s/ *Jonathan Bondy*
      JONATHAN BONDY
      STEPHEN A. WIEDER