# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement"), dated August __, 2017, is between (i) The Hanover Insurance Company ("Hanover") and (ii) A.J.S. Project Management, Inc. ("AJS"), Anthony Sclafani, Robert Hohmann and Angela Hohmann, jointly and severally (collectively, the "Indemnitors"), the signatories hereto each a "Party", and, collectively, the "Parties".

**WHEREAS**, Hanover has commenced an action in the United States District Court for the Southern District of New York, entitled *The Hanover Insurance Company v. A.J.S. Project Management, Inc., et al.*, Case No. 17-cv-02038 (LGS) (JLC) ("the Action"); and

**WHEREAS**, in the Action, Hanover seeks recovery from the Indemnitors for, among other things, losses that Hanover incurred as a result of (a) having issued surety bonds on behalf of AJS ("Bond Losses") and (b) expenses (the "Expenses") Hanover has incurred due to having issued bonds on behalf of AJS, as well as in enforcing Hanover's rights under a written Agreement of Indemnity (the "Indemnity Agreement"), dated October 5, 2010 and executed by each of the Indemnitors in favor of Hanover.

**WHEREAS**, the Parties wish to settle the Action as set forth in this Agreement;

**NOW** upon the mutual promises and covenants contained herein, the Parties to this Agreement agree as follows:

1. All the above "Whereas" paragraphs are incorporated herein.

2. The Indemnitors agree and acknowledge that they are jointly and severally indebted to Hanover as alleged in the Action, and the Parties agree that the principal amount of such liability is $461,465.87 (the "Indebtedness"), which amount reflects the Losses and Expenses incurred by Hanover as of August 8, 2016. Notwithstanding the foregoing, during such period that the Indemnitors are not in default (as hereinafter defined) under this Agreement, Hanover agrees to forbear from judicially enforcing the Indebtedness.

3. The Indebtedness shall be paid, with interest at 3.09% per annum, as follows: (1) an initial payment of $10,000.00 due on September 30, 2017, $10,000.00 due on October 31, 2017, and $10,000.00 due on November 30, 2017, $10,000.00 due on December 31, 2017 and $10,000.00 due on January 31, 2018 (2) followed by 19 equal quarterly payments, to commence on April 1, 2018, to be made so as to be received by Hanover on or before the first business day of each quarter, each in the amount of $10,000.00, and (3) followed by a 20th and final quarterly payment in the amount of the remaining Indebtedness, including all accrued interest, due and payable on January 1, 2023.

4. All monies received by AJS or its counsel on those projects and/or contracts with respect to which Hanover issued surety bonds on behalf of AJS, net of any remaining funds due subcontractors and suppliers (on a per-project basis) under Article 3-A of the New York Lien Law, shall be paid to Hanover and applied against the Indebtedness and treated as prepayments

but shall not reduce the amount or number of the remaining quarterly payments due until the entire amount of the Indebtedness has been satisfied. If requested by Hanover, AJS shall execute new forms of assignments whereby all contracts funds due under any AJS contract for which Hanover issued a surety bond shall be paid to Hanover.

5. In the event the Indemnitors elect to make additional and/or earlier payments toward the Indebtedness they may do so without penalty, and the interest to be paid on the remaining balance of the Indebtedness shall be adjusted accordingly.

6. All payments received by Hanover in connection with Paragraphs 3, 4 and 5 of this Agreement shall be applied to the principal amount of the Indebtedness. Accrued interest shall be calculated no later than 30 days prior to the date on which the balance of the Indebtedness is due. If the Indemnitors pay or cause to be paid the entire principal amount of the Indebtedness by June 1, 2022, interest shall be waived.

7. All payments made shall be by check payable to The Hanover Insurance Company, and delivered to Hanover's counsel in the Action (Jonathan Bondy, Esq.).

8. **The homestead exemption that is contained in the Addendum to the Indemnity Agreement is hereby rescinded.**

9. In the event any scheduled payment is not timely received, and remains unpaid after 10 days' email notice by Hanover or its counsel to the Indemnitors, care of Anthony Sclafani at the email address: ASclafani@ajsconstruction.com (with a copy to Jonathan Scher, Esq., counsel for the Indemnitors, at the e-mail address jscher@scherlawfirm.com, with a copy to Austin Graff, Esq., at the e-mail address agraff@scherlawfirm.com), or if by reason of bankruptcy or otherwise any portion of the Indebtedness that has been paid to Hanover is thereafter deemed a preference or is otherwise set aside and such amount(s) are not reimbursed to Hanover within 30 days after email notice to the Indemnitors, the Indemnitors shall be deemed to be in default of this Agreement. In such an event, the Indemnitors shall be and remain liable to Hanover for the full amount of the Indebtedness, with due credit for the principal amount of the payments toward the Indebtedness received by Hanover under this Agreement, and Hanover may immediately seek the entry of judgment in the Action against any or all of the Indemnitors. The Indemnitors agree that, as to a failure to make payment, they will only be provided notice of same on two occasions within any twelve (12) month period. If there is a third failure within any twelve (12) month period to make payment, Hanover may seek entry of judgment as provided for in this paragraph without further notice.

10. Subject only to timely receipt of the full amount of the Indebtedness, and subject to and conditioned upon the Indemnitors' full performance of their obligations hereunder, Hanover relinquishes, acquits, waives and forever discharges the Indemnitors from any and all claims, rights, demands, actions or causes of action, known or unknown, asserted or unasserted, of whatsoever kind or nature that Hanover has or had for the Bond Losses and Expenses sought in the Action. **Hanover otherwise expressly reserves its rights under the Indemnity Agreement, including specifically its right to seek recovery of expenses incurred after August 1, 2016 as well as any losses and expenses, including attorneys' fees, that may be**

incurred after the date of this Agreement, and the Indemnity Agreement remains in full force and effect (except as modified by this Agreement).

11. Effective upon the execution of this Agreement, the Indemnitors each relinquish, acquit, waive and forever discharge Hanover and its respective corporate parent(s), subsidiary(s), affiliates, officers, agents, representatives, heirs, executors, devises and/or assigns from any and all claims, rights, demands, actions or causes of action, known or unknown, asserted or unasserted, of whatsoever kind or nature, that any of the Indemnitors have or may have against Hanover arising from the beginning of time through the date of this Agreement.

12. Hanover and the Indemnitors agree that they shall each cause their respective counsel in the Action to execute a Stipulation and Consent Order dismissing the Action, without prejudice, except that the Court shall retain jurisdiction for the purpose of enforcing this Agreement. The Indemnitors each acknowledge that they have been served with process in the Action and waive any defense they may have as to the manner in which process was served. **THE PARTIES EACH IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING RELATING TO OR ARISING OUT OF THIS AGREEMENT OR IN THE ACTION.**

13. No waiver of any right of a Party under this Agreement shall be effective unless such waiver is in writing and executed by such Party and notice thereof is given to the other Parties. No action taken pursuant to this Agreement shall be deemed to constitute a waiver by the Party taking such action in compliance with any representation, warranty, covenant or Agreement contained herein. The waiver by any Party of any condition or of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other conditions or other breach. The waiver by any Party of any of the conditions precedent to its obligations under this Agreement shall not preclude such Party from seeking redress for breach of this Agreement. No failure to exercise, and no delay in exercising, any right, power or privilege hereunder by any Party shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

14. In case any provision contained in this Agreement is invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

15. The Parties do not intend by any provision of this Agreement to create any third-party beneficiaries, nor to confer any benefit, or enforceable rights under this Agreement or otherwise, upon any person or entity other than the Parties.

16. The Parties have had the opportunity to confer with legal counsel concerning the terms of this Agreement, and agree to be bound by its terms and conditions. The Parties further agree that each Party's counsel has reviewed this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

17. This Agreement shall be binding upon the Parties hereto and their respective executors, heirs, successors, and/or assigns.

18. This Agreement shall be governed and construed in accordance with the laws of the State of New York, without reference to principles of conflicts of law.

19. Each signatory to this Agreement represents and warrants that he or she is authorized to bind each business entity for which he or she has signed this Agreement. This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which taken together shall constitute one and the same agreement. Any of the Parties may execute this Agreement by signing any such counterpart and each of such counterparts shall for all purposes be deemed an original. This Agreement may be executed by facsimile and/or e-mail which shall have the same force and effect as an original signature.

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Agreement, or caused this Agreement to be duly executed and delivered by their proper and duly authorized officers, as of the day and year first above written.

The Hanover Insurance Company

By: _____
Joseph Brenstrom
Vice President Surety

A.J.S. Project Management, Inc.

By: _____
Anthony Sclafani
President


Anthony Sclafani, Individually

By: _____
Anthony Sclafani


Robert Hohmann, Individually

By: _____
Robert Hohmann


Angela Hohmann, Individually

By: _____
Angela Hohmann

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF __Kings__ sept. 04

On this __7__ day of ~~August,~~ 2017, before me personally appeared Anthony Sclafani, who being by me duly sworn did depose and say that he/she is the President of A.J.S. Project Management, Inc., the corporation named in the foregoing instrument, that he executed the foregoing instrument on behalf of the Company with full authority to do so from the Board of Directors of the Company, that he/she executed the foregoing instrument on behalf of the Company for the uses and purposes set forth herein.

_____
Notary Public

9/7/17

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF __Kings__ sept. 04

On this __7__ day of ~~August,~~ 2017, before me personally appeared Anthony Sclafani who being by me duly sworn did depose and say that he/she is the person named in the foregoing instrument.

_____
Notary Public

9/7/17

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF __Kings__ sept. 04

On this __7__ day of ~~August,~~ 2017, before me personally appeared Robert Hohmann who being by me duly sworn did depose and say that he/she is the person named in the foregoing instrument.

_____
Notary Public

9/7/17

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF __Kings__ sept. 04

On this __7__ day of ~~August,~~ 2017, before me personally appeared Angela Hohmann who being by me duly sworn did depose and say that he/she is the person named in the foregoing instrument.

_____
Notary Public

9/7/17